EUGENE G. IREDALE: SBN 75292
JULIA YOO:  SBN 231163
GRACE JUN: SBN 287973
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525   FAX: (619) 233-3221

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
ALEKSANDR J. YARMOLINETS (276707)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
ayarmolinets@bholaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT LOPEZ, decedent, by and through his successor-in-interest CYNTHIA LOPEZ; and CYNTHIA LOPEZ, individually, and on behalf of general public,<br><br>              Plaintiffs,<br><br>       v.<br><br>BRADLEY GLENN HAY, in his individual capacity; PATTY MAYSENT, in her individual capacity; GERARD MANECKE, JR., in his individual capacity; THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; and DOES 1 through 100,<br><br>              Defendants. | Case No.    '20CV0171 GPC MSB<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Table of Contents</u>

I.   JURISDICTION AND PARTIES ........................................................3

II.  FACTS ...............................................................................................4

  A.  After Undergoing Surgery at UCSD Hospital, No Doctor or Hospital
Administrator Tells Robert Lopez that Anesthesiologist Brad Hay Stole
Anesthetics Intended for Decedent's Use During Surgery....................................4

  B.  Defendant Hay Loses His License After Admitting He Falsified Medical
Records, Made False Representations, and Practiced Medicine While Under the
Influence of Narcotics................................................................5

  C.  UCSD Hospital's Lax Enforcement and Monitoring Allows Hay to Steal
Fentanyl from the Hospital for Months Without Detection. ...............................11

  D.  Defendants Had a Duty to Disclose Hay's Criminal Acts to All Anesthesia
Patients ...........................................................................11

III.  FIRST CAUSE OF ACTION ........................................................14

DENIAL OF ACCESS TO COURTS (42 U.S.C. § 1983)....................................16

IV.  SECOND CAUSE OF ACTION ...................................................17

CONSPIRACY TO COMMIT CIVIL RIGHTS VIOLATION (42 U.S.C. §
1983) ...............................................................................17

V.  JURY DEMAND ...........................................................................19

Plaintiffs Robert Lopez, decedent, by and through his successor-in-interest Cynthia Lopez, individually and on behalf of the general public, by and through their counsel of record, upon personal knowledge as to facts pertaining to themselves and on information and belief as to all other matters, bring this action against defendants Bradley Glenn Hay, Patty Maysent,  Gerard Manecke, Jr., and the Regents of the University of California, and respectfully allege and complain as follows:

## NATURE OF THE CASE

1.      This consumer protection action arises out of systemic and intentional failure by principals and employees of UC San Diego Medical Center, a major hospital system, to inform its patients of a years-long game of Russian roulette defendants played with each patient treated by a drug-addict who stole their pain medication, administered life-threatening anesthesia to them while high on their pain medication, and the resultant overbilling of patients, private insurance companies and the Centers for Medicare and Medicaid Services ("CMS") for their medical treatment, without reimbursing patients or the third-party payers, in violation of state and federal law.

2.      For years, defendant Hay, an anesthesiologist, checked out sedatives and pain medication in amounts in excess of those necessary to treat his patients, falsified patients' treatment records and manipulated his colleagues to conceal these excessive amounts, and often injected himself with these medications before putting the patients from whom he has stolen under anaesthesia for their surgeries. Defendant Maysent, and defendant Hay's supervisors, knew of his drug addition, turned a blind eye, and knew or should have known that defendant Hay was stealing his patients' medications and administering anesthesia while under the influence of drugs.

3.      During a deposition in November 2019, Hay testified under oath that between April 2016 and January 24, 2017, he habitually stole controlled substances

form his patients at UCSD Medical Center; falsified their medical records; and practiced medicine while under the influence of controlled substances. He testified that he injected himself with controlled substances approximately 3 – 5 times each day during this time period.

4. Defendant Hay's drug abuse culminated in a fentanyl overdose on the day he treated plaintiff. Despite his overdose, and the years of knowing of his drug abuse, defendants failed to inform the patients defendant Hays treated of the fact that the doctor administering their anesthesia, where even a minor miscalculation in the dose could kill, was high on the same drugs he was administering to them.

5. Because defendants billed plaintiff Robert Lopez and Hay's other patients for anesthetics and pain medications that were administered to them, as well as the amounts stolen by defendant Hay, patients and their insurers wound up paying for the patients anesthesia and pain medications, and to feed defendant Hay's drug addiction. Nevertheless, despite years of overbilling and several years after defendant Hay's overdose, defendants have not informed Hay's patients of the overbilling or of Hay's conduct and the potential impact on them.

6. Defendants violated state and federal laws and regulations governing reimbursement claims by healthcare providers. Defendants' fraudulent, unlawful and unfair conduct caused plaintiff Robert Lopez and other patients to overpay for their treatments and allowed defendants to receive a windfall from the patients' private insurers, Dept. of Veterans Affairs and the CMS. Defendants also kept Hay's patients in the dark and ignorant of their rights to seek relief against defendants in court. Accordingly, plaintiffs seek restitution, damages, including compensatory and punitive damages, in an amount to be proven at trial, an accounting and injunction directing defendants to inform Hay's patients of his conduct and drug addiction, and to provide to them an accurate accounting of the cost of their medical treatments and the amounts billed to their insurers.

## VENUE AND JURISDICTION

7.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because defendants' conduct violated federal laws and regulations, including CMS rules governing reimbursement claims and plaintiffs assert violations of federal civil rights laws.

8.     Venue is proper in the Southern District of California because the acts or omissions which form the basis of the plaintiff's claims occurred in the Southern District of California. Venue is also proper in this District because at all times relevant hereto, defendants Bradley Glenn Hay, Patty Maysent, and Gerard Manecke, Jr. were individuals residing in this District, and defendant Regents of the University of California was a government entity under Article 9, section 9, of the California Constitution.

## PARTIES

9.     Defendant Patty Maysent is the CEO of UC San Diego Medical Center, which owns and operates UCSD Hospital in Hillcrest ("UCSD Hospital").

10.     Defendant the Regents of the University of California ("Regents") manages and operates UC San Diego Medical Center.

11.     Defendant Bradley Glenn Hay, M.D., was employed by the Regents and held himself out as a specialist in anesthesiology. He worked as an anesthesiologist at the UCSD Hospital. Defendant Hay is a drug addict and a convicted felon. During his employment by the Regents, and under supervision of defendant Maysent, defendant Hay stole sedatives and pain medication from his patients, used controlled substances while on duty, and administered anesthesia while under the influence of narcotics.

12.     Defendant Gerard Manecke, Jr., at all times relevant to this complaint, was the Chair of the Department of Anesthesiology at University of California, San Diego School of Medicine and UCSD Medical Center.  He was responsible for supervising all anesthesiologists and nurse anesthetists.

13.     Plaintiff Robert Lopez underwent surgery at the UCSD Hospital. Defendant Hay administered Mr. Lopez's anesthesia. Plaintiff Robert Lopez died several months after January 2017.

14.     Plaintiff Cynthia Lopez was the daughter of plaintiff Robert Lopez and is his successor-in-interest. At all times relevant to this complaint, she was a resident of San Diego County.

15.     Plaintiffs discovered the facts giving rise to the claims herein in May 2018. Before May 2018, defendants had actively concealed their wrongful acts from plaintiffs.

16.     At all times relevant to this complaint, individual defendants Maysent, Hay, and Manecke acted under color of state law and within the scope of their employment as agents and employees of the Regents, a public entity.

17.     Although not applicable to all claims asserted, Plaintiffs provided notices of intent to sue under California's Code of Civil Procedure section 364, subdivision (a), part of Medical Injury Compensation Reform Act ("MICRA") to Maysent and Hay on March 29, 2019.

18.     Plaintiffs are ignorant of the true names and capacities of DOES 1 through 100, inclusive, and/or the facts giving rise to their liability and will amend this complaint once their identities have been ascertained as well as the facts giving rise to their liability. These defendants were the agents, servants and employees of each of the other named defendants and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer and each of the other named defendants and each of the defendants had approved or ratified the actions of the other defendants or were independent tortfeasors.

## **FACTUAL ALLEGATIONS**

**After Robert Lopez Underwent Surgery at UCSD Hospital, No Doctor or Hospital Administrator Told Robert Lopez or any other affected patients that**

4

**Anesthesiologist Brad Hay Stole Anesthetics Intended for Decedent's Use During Surgery.**

19.    On the morning of January 27, 2017, Hay, then an anesthesiologist at UCSD Hiospital, was scheduled to perform anesthesia on two surgical patients, including decedent Robert Lopez. Hay stole anesthetics, which are controlled substances, from Robert Lopez for his own use.

20.    The drugs used as anesthesia during the patients' surgeries on January 27, 2017, included Sufentanil and Fentanyl, both Schedule II controlled substance under state law [Health and Safety Code §11055(c)(25)] and federal law [21 C.F.R. §1308(c)(27)].

21.    Robert Lopez underwent a left arm dialysis access graft. After the surgery, the staff at UCSD Hospital told Robert Lopez's family that his surgery went well. No doctor or medical staff member ever notified Robert Lopez or his family that there were any issues during or after the surgery.

22.    In May 2018, through an investigator for the California Medical Board, Cynthia Lopez discovered that Brad Hay had been the anesthesiologist for her father's January 27, 2017 surgery; that Hay had stolen Sufentanil and overdosed on the drug after Robert Lopez's surgery; and that Hay had a long history of substance abuse.

**Defendant Hay Loses His License After Admitting He Falsified Medical Records, Made False Representations, and Practiced Medicine While Under the Influence of Narcotics.**

23.    On October 17, 2017, the Medical Board of California filed an Accusation against defendant Hay. A true and accurate copy of the Accusation and Stipulated Surrender of License and Disciplinary Order regarding defendant Hay is attached hereto as Exhibit 1 and incorporated by reference, as if it fully set forth herein. The Medical Board of California's Accusation against Hay set forth the following facts, all of which had been concealed from plaintiffs by UCSD Hospital,

and the hospital's agents and employees, including defendant Maysent and the Regents:

a.    Defendant Hay has a long-documented history of alcohol and drug dependence. Hay first used alcohol at age 14 and drank alcohol most weekends throughout high school. During college and medical school, Hay drank a 12-pack or more of alcohol approximately three (3) to five (5) days per week. This frequency of drinking continued through his residency, during which Hay came to work intoxicated or hungover on multiple occasions. Hay's addiction to alcohol had legal consequences and had resulted in two (2) alcohol-related driving citations in the past.

b.    Between July 1, 2002, and June 30, 2006, during his residency, Hay began to steal Fentanyl (a pain killer at least ten times more potent than heroin) from work. He initially brought the Fentanyl home for his own use, but then eventually began injecting himself with Fentanyl in the bathrooms at work.

c.    In or around 2006, Hay was offered a job as an attending anesthesiologist at the Regents UCSD Hospital. Due to his stress and substance abuse issues, Hay chose to take some time off before beginning his job at the UCSD Hospital. During that time, Hay lived at home with his parents, and for several months, he drank approximately one (1) liter of vodka each day.

d.    Hay began working as an anesthesiologist at the UCSD Hospital in or around 2007.

e.    In or around July 2008, Hay was confronted by colleagues at the UCSD Hospital who observed him impaired while on duty. He was ordered to report to the UCSD Hospital's Well Being Committee, which referred him for treatment at the Hazelton Betty Ford Foundation Drug Addiction Treatment Center ("Betty Ford").

f.      Between on or about July 3, 2008, through on or about October 30, 2008, Hay received treatment for addiction at Betty Ford. During that time, he was diagnosed with Bipolar II Disorder, and was prescribed Lexapro and Lamictal.

g.      In or around November 2008, Hay returned to work at the UCSD Hospital, and maintained sobriety through regular monitoring by the Well Being Committee from in or around 2009 through in or around 2014.

h.      In or around October 2015, Hay stopped seeing his psychiatrist and began self-prescribing psychiatric medications.

i.      In or around January 2016, Hay began ordering Modafinil from India for his own use.

j.      In or around April 2016, Hay began to steal Fentanyl from the UCSD Hospital for his own use.

k.      Between in or around April 2016, through in or around October 2016, Hay's use of Fentanyl gradually increased to the point that he was injecting himself with Fentanyl approximately five (5) to eight (8) times per day.

l.      In or around October 2016, Hay enrolled himself in an intensive outpatient treatment program at Casa Palmera Treatment Center ("Casa Palmera").

m.      From on or about October 4, 2016, through on or about October 26, 2016, Hay received treatment for addiction at Casa Palmera.

n.      Sometime after completing his treatment at Casa Palmera, Hay relapsed and began using Fentanyl again.

o.      On or about January 27, 2017, Hay was scheduled to perform anesthesia on surgical patients Robert Lopez and Randy Dalo at the UCSD Hospital. At some point that morning, defendant Hay accidentally cut his finger while cutting a bagel, causing tendon damage. Despite the injury, Hay

returned to his assigned surgical cases in order to steal medication for his own use.

p.      In preparation for Dalo's surgery, Hay removed four 5 ml ampules (50 mcg/ml; 1000 micrograms total) of Sufentanil from the Anesthesia Medication Supply in the operating room at the UCSD Hospital. Nodler, a nurse anesthetist assisting Hay, also extracted Fentanyl from the Anesthesia Medication Supply in the operating room at the UCSD Hospital for use in patient Dalo's surgery.

q.      At some point during patient Dalo's surgery, nurse Nodler made a charting error regarding the amount of Sufentanil administered to Dalo. When Hay noted the error, he told Nodler, "we'll never get the dose right now, so let's make the record saying we gave the whole amount." The anesthesia record for this surgery indicates that 1.02 mg of Sufentanil was administered to the patient. The anesthesia post-procedure evaluation completed by Hay indicates that "all controlled substances during the case accounted for and disposed of per hospital policy."

r.      After completing Dalo's surgery, defendant Hay went into a patient/staff bathroom and injected himself with Sufentanil.

s.      At approximately 1:30 p.m., Hay was found by a nurse, unconscious, face-down on the patient/staff bathroom floor, covered in vomit, with his pants down around his ankles. Three (3) syringes were located near his body, two of which still contained Sufentanil.

t.      Multiple physicians were called to the bathroom to assist, and although Hay was difficult to arouse, he eventually regained consciousness. Once awakened, Hay was ordered to report to the UCSD Hospital emergency room for a fitness for duty evaluation. Hay then left the UCSD Hospital and never reported to the emergency room.

u.     Some time after leaving the UCSD Hospital, Hay informed the Regents and defendant Maysent that he would be taking a medical leave of absence, and enrolled himself in Professionals Treatment at Promises Treatment Center ("Promises"), where he received treatment for addiction from on or about 11 February 6, 2017, through on or about April 6, 2017.

v.     On or about July 31, 2017, Hay voluntarily submitted to a psychiatric evaluation from Board-appointed psychiatrist, A.A., M.D., J.D., FCLM ("Dr. A.A.") After an extensive review of records, a lengthy examination, and an interview of defendant Hay, Dr. A.A. concluded, among other things, that Hay suffers from Opioid Use Disorder, Severe, In Early Remission. The psychiatrist further opined that defendant Hay's ability to practice medicine safely is impaired by his opioid use disorder and permitting Hay to engage in the unrestricted practice of medicine will endanger the public health, safety, and welfare.

24.     The Accusation by the Medical Board of California charged Hay with the following eight counts as the basis for disciplinary action: (1) Prescribing or Administering a Controlled Substance to Himself; (2) Use of Dangerous Drugs to an Extent, or in a Manner, as to be Dangerous to Himself, to Others, or the Public (violation of Bus. & Prof. Code § 2239(a)); (3) Violation of State Laws Regulating Dangerous Drugs and/or Controlled Substances (violation of Bus. & Prof. Code § 2238); (4) Dishonesty or Corruption (violation of Bus. & Prof. Code § 2234(e)); (5) False Representation (violation of Bus. & Prof. Code § 2261); (6) Creation of False Medical Records with Fraudulent Intent (violation of Bus. & Prof. Code § 2262); (7) Failure to Maintain Adequate and Accurate Records (violation of Bus. & Prof. Code § 2266); and (8) Practice Under the Influence of a Narcotic (violation of Bus. & Prof. Code § 2280).

25.     In a Stipulation signed on March 28, 2018, defendant Hay admitted the truth of each charge and allegation in the Accusation, agreed that cause existed for action and discipline, and surrendered his license to practice medicine.

26.     Defendant Maysent, the Regents and Doe Defendants were aware of defendant Hay's serious addiction and his inability to perform competently.

27.     Upon information and belief, defendant Maysent, the Regents and Doe Defendants knew, or should have known, that Hay had routinely stolen controlled substances from patients because of defendant Hay's long history of addiction, internal reports of defendant Hay's intoxication at work, and because he overdosed in the UCSD Hospital's restroom, passed out in his own vomit with the Sufentanil stolen from patient Dalo. Importantly, defendants also knew, or should have known, of Hay's actions because they have an obligation to audit their medicine locker records, ensure authorized and lawful use of controlled substances administered to patients, and ensure accurate billing for their patients' medical treatments.

28.     Defendant Hay committed an unlawful act by stealing and using a controlled substance under California Penal Code § 487; California Health and Safety Code §§ 11350 and 11550; 18 U.S.C. § 670; and/or 21 U.S.C. § 841. Hay admitted to violating the following statutes, as set forth in the Medical Board's Accusation: (1) Prescribing or Administering a Controlled Substance to Himself; (2) Use of Dangerous Drugs to an Extent, or in a Manner, as to be Dangerous to Himself, to Others, or the Public (violation of Bus. & Prof. Code § 2239(a)); (3) Violation of State Laws Regulating Dangerous Drugs and/or Controlled Substances (violation of Bus. & Prof. Code § 2238); (4) Dishonesty or Corruption (violation of Bus. & Prof. Code § 2234(e)); (5) False Representation (violation of Bus. & Prof. Code § 2261); (6) Creation of False Medical Records with Fraudulent Intent (violation of Bus. & Prof. Code § 2262); (7) Failure to Maintain Adequate and Accurate Records (violation of Bus. & Prof. Code § 2266); and (8) Practice Under the Influence of a Narcotic (violation of Bus. & Prof. Code § 2280).

**Defendants Failed to Notify Hay's Anesthesia Patients of Hay's Illegal Conduct During Their Surgeries.**

29.     According to the allegations in the Accusation, which Hay admitted were true, Hay began stealing Fentanyl from the UCSD Hospital in April 2016. He injected himself with Fentanyl approximately 5 to 8 times per day. Hay stole Fentanyl from the UCSD Hospital from April 2016 to January 27, 2017, the date of plaintiff's surgery.

30.     From April 2016 to January 27, 2017, Hay regularly stole Fentanyl from UCSD Hospital that was intended for surgical patients by using each patient's identity and surgery. Hay administered anesthesia to these patients while impaired and under the influence of a controlled substance. To conceal his fraudulent procurement of the controlled substances, Hay routinely falsified these patients' medical records to indicate that he was administering the Fentanyl to these patients.

31.     Attached hereto as Exhibit 2 and incorporated herein by reference, as if it is fully set forth herein, is a list of the dates and times of every surgery in which defendant Hay performed anesthesia from April 5, 2016 to January 27, 2017.

**Defendants Had a Duty to Disclose Hay's Criminal Acts to All Anesthesia Patients**

32.     Under California law, hospital and medical care patients have the right to "[r]eceive information about the illness, the course of treatment and prospects for recovery in terms that the patient can understand" and to "[p]articipate actively in decisions regarding medical care." Cal. Code Regs. tit. 22, § 70707. All hospital personnel are required to "observe these patients' rights." *Id*.

33.     "The doctor-patient relationship is a fiduciary one and as a consequence of the physician's 'fiducial' obligations, the physician is prohibited from misrepresenting the nature of the patient's medical condition." *Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (1st Dist. 2007). Doctors have separate duties to "(1) disclose information that is necessary to make an informed decision about

proposed treatment, and (2) disclose information about the nature of a patient's medical condition[.]" *Id*. at 749 n.3.

34.    "The doctor-patient relationship is a fiduciary one and it is incumbent on the doctor to reveal all pertinent information to his patient. The same is true of the hospital-patient relationship." *Wohlgemuth v. Meyer*, 139 Cal. App. 2d 326, 331 (1st Dist. 1956). Hospitals "owe a duty of a fiduciary nature to its patients and the public to deliver safe and competent medical services." *Weinberg v. Cedars-Sinai Med. Ctr.*, 119 Cal. App. 4th 1098, 1109 (2d Dist. 2004).

35.    Under Cal. Health & Safety Code § 1279.1, a health facility, including a general acute care hospital such as the UCSD Hospital, must report an "adverse event" to the California State Department of Health Services within five days after the "adverse event has been detected." At the time the report is made, the health facility must inform the patient of the adverse event. Health & Safety Code § 1279.1(c)). An "adverse event" under Health & Safety Code § 1279.1 includes the following:

a.    The "wrong surgical or other invasive procedure performed on a patient, which is a procedure performed on a patient that is inconsistent with the documented informed consent for that patient." (*id*. subd. (b)(1)(C));

b.    "A patient death or serious disability associated with a medication error, including, but not limited to, an error involving the wrong drug, the wrong dose, the wrong patient, the wrong time, the wrong rate, the wrong preparation, or the wrong route of administration, excluding reasonable differences in clinical judgment on drug selection and dose." *id*. subd. (b)(4)(A);

c.    Criminal events. *id*. subd. (b)(6); and

d.    "An adverse event or series of adverse events that cause the death or serious disability of a patient, personnel, or visitor." *id*. subd. (b)(7).

A "serious disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual, or the loss of bodily function, if the impairment or loss lasts more than seven days …" *Id.* § 1279.1(d).

36. UC San Diego policy no. MCP 562.1, "Disclosure of Unanticipated Events, Unanticipated Adverse Outcomes and Medical Errors" defines an "Unanticipated Adverse Outcome" as a "clinical outcome not foreseen by the patient and the responsible practitioner that results in a potential for an actual meaningful negative change to the patient, and that may include adverse events or incidents, unusual occurrences, or sentinel events." The policy requires the attending physician to "inform the patient of the anticipated event, unanticipated adverse outcome or medical errors in a timely manner. Risk management may be consulted as needed." The policy instructs the attending physician to disclose the "nature of the event, the severity, and cause, if known" in a "factual, non-judgmental manner. Information that will enable the patient or surrogate to make informed decisions regarding further medical attention shall be provided." The policy states the "[d]isclosure shall be given at the earliest opportunity after the event is identified and must occur before the Regulatory Affairs Department (no later than 5 days after event has been detected) reports the events to a Regulatory Agency under the relevant mandatory reporting requirements."

37. The falsification of medical records is a crime. Pen. Code § 471.5. The use of prescribing or administering to himself any controlled substance or dangerous drug to the extent that it impairs the ability of a licensed doctor to practice medicine safely constitutes unprofessional conduct. Bus. & Prof. Code § 2239. False representations constitute unprofessional conduct. *Id.* § 2261. Practice under the influence of a narcotic is unprofessional conduct and is a crime. *Id.* § 2280.

38. Defendants Hay, Maysent, and Doe Defendants (Supervisory Officials at UCSD Hospital) had a duty to inform patients of the following: (1) that Hay had

performed anesthesia during patients' surgeries in order to use the patients' identities to steal Fentanyl that was intended for the patients' use; (2) that Hay had falsified patients' medical records to conceal his misappropriation of controlled substances; and (3) that Hay had been under the influence of drugs at the time he performed anesthesia during patients' surgeries.

39.     Hay had a fiduciary duty to his patients to practice medicine safety by refraining from abuse of controlled substances and by avoiding the excessive use of drugs or alcohol to the point of impairment. *See*, *e.g.*, Bus. & Prof. Code §§ 2239(a) and 2280. Hay had a fiduciary duty to refrain from making false representations (*see* Bus. & Prof. Code § 2261) and to refrain from altering or modifying patients' medical records with fraudulent intent or creating a false medical record for patients with fraudulent intent. *Id*. § 2262. Hay breached his duty to his patients when he practiced medicine under the influence of a controlled substance; when he stole anesthesia intended for patients for his own use; and when he falsified patients' medical records to conceal his theft of the anesthesia.

40.     UCSD Hospital had a fiduciary obligation to ensure the enforcement of existing policies strictly regulating access to controlled substances at the hospital; to properly perform weekly audits of anesthesia units so any discrepancy related to the absence of controlled substances could be found; to alert the appropriate regulatory and police agencies of the suspected theft of any controlled substance; and, by complying with its own internal policies and procedures, become aware of Hay's repeated theft and abuse of Fentanyl. UCSD Hospital had an obligation to restrict Hay from accessing and abusing Fentanyl. It's failure to follow its own internal policies permitted Hay to extensively abuse drugs and allowed Hay to practice medicine while under the influence of a narcotic. It also allowed it and the other defendants to overbill patients and their insurance providers.

## **FIRST CAUSE OF ACTION**

**Violations of California's Unfair Competition Law Civil Code § 17200, *et seq*.**

(by plaintiffs against all defendants)

41.     Plaintiffs hereby reallege all prior paragraphs of this Complaint and incorporate the same herein by reference, as if these paragraphs were fully set forth herein.

42.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Bus. Prof. Code § 17200.

43.     In the course of conducting business, defendants committed "unlawful" business practices by, among other things, failing to disclose to plaintiffs and other patients treated by defendant Hay that they were being put under anesthesia by a drug addict, with a known history of substance abuse, and depriving patients of an ability to be fully informed of the nature of their medical care and treatments. Defendants also committed "unlawful" business practices by breaching their duty to provide accurate accounting for reimbursement of claims arising out of plaintiff Robert Lopez's and other patients' medical treatments, and by failing to disclose to patients, their private insurers, CMS and the Dept. of Veterans Affairs that they were paying for defendant Hay's drug addiction and failing to reimburse patients and their insurers for the overcharges. This conduct violates a variety of state and federal laws, as detailed above and as will be set forth in the course of this litigation, which form predicate violations of the unlawful prong of the UCL. This action is brought pursuant to the provisions of *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017). Plaintiffs have lost money or property as a result of defendants' violations of the UCL.

44.     In the course of conducting business, defendants committed "unfair" business practices, by among other things, misrepresenting the actual costs of plaintiff's and other patients' medical treatments, and failing to disclose to them that they were treated by a drug addict with a known history of substance abuse. Despite knowing that defendant Hay stole drugs from patients for years, defendants failed to issue corrective invoices to patients, private insurers, CMS and the Dept. of Veterans Affairs. Instead, reaping the financial benefits perpetuated by a drug addict and thief.

15

45.     Defendants' acts and omissions also violate and offend the public policy as announced by the violations of state and federal laws and regulations alleged. These acts and omissions were immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers in violation of the unfair prong of the UCL. There were reasonably available alternatives to further defendants' legitimate business interests other than the conduct described herein.

46.     The UCL also prohibits any "fraudulent business act or practice." In the course of conducting business, defendants committed "fraudulent business act[s] or practices" by among other things, failing to disclose to plaintiff Robert Lopez and other patients treated by defendant Hay that they had been put under anesthesia by a drug addict with a known history of substance abuse, depriving patients of an ability to be fully informed of the nature of their medical care and treatments, or that this had occurred to the Lopez and the other patients. Defendants also engaged in "fraudulent" business practices by concealing the actual and accurate costs of their treatments, and subsequently failing to provide an accurate accounting of the overbilling.

47.     Defendants' actions and omissions, as more fully set forth above, were material in that a reasonable consumer would have considered them to be important in deciding whether to obtain medical treatment from defendants and paying the amounts overbilled.

48.     Pursuant to Business & Professions Code sections 17203 and 17205, plaintiffs seek an injunction prohibiting defendants from continuing such practices, corrective accounting, restitution and all other relief this Court deems appropriate.

## SECOND CAUSE OF ACTION

### Denial of Access to Courts (42 U.S.C. § 1983)

(by plaintiffs against all defendants)

49.     Plaintiffs hereby reallege all prior paragraphs of this Complaint and incorporate the same herein by reference, as if these paragraphs were fully set forth

herein.

50.    Under the First and Fourteenth Amendments, each person has a right of access to the courts. "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 741 (1983). The right of access to the courts is "founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974). "The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision-making process." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

51.    As a direct and proximate result of defendants' actions, as alleged herein, plaintiffs were injured as set forth above and are entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial.

52.    In doing the foregoing wrongful acts, defendants acted in reckless and callous disregard for plaintiff's constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent and malicious, thus warranting the imposition of punitive damages against each individual defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

## THIRD CAUSE OF ACTION

### Conspiracy to Commit Civil Rights Violation (42 U.S.C. § 1983)

(by plaintiffs against all defendants)

53.    Plaintiffs hereby reallege all prior paragraphs of this Complaint and incorporate the same herein by reference, as if these paragraphs were fully set forth herein.

17

54.    "A 'conspiracy of silence' among officers is actionable as a § 1983 conspiracy because the coordinated officer conduct 'impede[s] an individual's access to courts' and renders 'hollow' a victim's right to redress in a court of law." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (internal citation omitted).

55.    Defendants conspired to conceal Hay's fraudulent misconduct from his patients by purposely failing to disclose to affected patients that Hay had used their identities to steal controlled substances intended for their use during surgery.

56.    As a direct and proximate result of defendants' actions, as alleged herein, plaintiffs were injured as set forth above and are entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial.

57.    In doing the foregoing wrongful acts, defendants acted in reckless and callous disregard for plaintiffs' constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent and malicious, thus warranting the imposition of punitive damages against each individual defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that upon final trial or hearing, judgment be awarded against defendants for:

(i)    restitution and actual, incidental, consequential, and nominal damages to be determined by the trier of fact;

(ii)    punitive damages;

(iii)    pre- and post-judgment interest at the highest legal rates applicable;

(iv)    injunctive relief;

(v)    attorneys' fees and litigation expenses;

(vi)    costs of suit; and

(vii)    such other and further relief that the Court deems just and proper.

18

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

Dated: January 24, 2020

IREDALE AND YOO, APC
EUGENE IREDALE (75292)
JULIA YOO (231163)
GRACE JUN (287973)

By:      *s/ Julia Yoo*
          JULIA YOO

105 West "F" Street, 4th Floor
San Diego, CA 92101
Tel: 619/233-1525
619/233-3221 (fax)
eiredale@iredalelaw.com
jyoo@iredalelaw.com
gjun@iredalelaw.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
ALEKSANDR J. YARMOLINETS
(276707)

By:      *s/ Timothy G. Blood*
          TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
ayarmolinets@bholaw.com

*Attorneys for Plaintiff*

19